Merrimack, {
Feb. 2, 1932. {

MARION SMALL, *Adm'x v.* BOSTON & MAINE RAILROAD.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

ALLEN, J. The decedent, in a drunken state, was walking northerly on the defendant's track near the railroad station at Windsor, Vermont. A train from the south struck him. As the train approached him, warning signals of the whistle were sounded, to which he paid no apparent attention in the time he had before being struck.

The plaintiff's only claim of liability was upon the last chance rule in force in Vermont. The decedent was negligent in becoming intoxicated and hence was in fault for creating his danger. But if in his situation of peril he was too irresponsible to be able to use care to save himself, or, if not thus irresponsible, the signals were not given in time for him to act, and if the defendant was or should have been aware of his peril and might not assume that he would save himself, its ensuing negligence imposed liability. In Vermont, "Briefly, the doctrine presupposes a perilous situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence has occurred when the defendant could, and the plaintiff could not, by use of the means available, avert the accident. In such case, the negligence of the parties creating the

situation is regarded as remote and that of the defendant in not averting the accident, after the peril is or should have been discovered, becomes the sole proximate cause of the injury . . .

"If negligence of the plaintiff is found, the test is (1) whether such negligence has ceased to be operative and become a mere condition or circumstance of the accident; and (2) whether there was, in legal contemplation, subsequent negligence on the part of the defendant." *Lachance* v. *Meyers*, 98 Vt. 498, 505.

In further limitation of the scope of the rule, the plaintiff's negligence is causal unless it appears that the defendant was or should have been aware of his danger and might not reasonably assume that he would save himself. *LaMountain* v. *Railroad*, 93 Vt. 21; *Miller* v. *Railway*, 95 Vt. 69.

The rule as thus defined is enforced in other Vermont cases, among which may be cited the following: *French* v. *Railway*, 76 Vt. 441; *Blodgett* v. *Railway*, 82 Vt. 269; *Aiken* v. *Metcalf*, 92 Vt. 57; *Zuverino* v. *Railroad*, 101 Vt. 261.

The jury may have properly reached these conclusions. The train's speed was 18 to 20 miles an hour. Under the conditions existing it could be stopped in 130 feet. It was not stopped until it had gone 150 feet after striking the decedent. He was seen by the fireman of the locomotive when he was 350 feet ahead. It took the train at least 12 seconds to reach him. The time needed to call for the brakes to be set and for the engineer to set them was a matter of 2 or 3 seconds. Ample opportunity to stop the train in season to save the decedent was had after it became apparent that he was heedless of the warning whistles if they were seasonably blown. This delay in braking the train might be found negligence ensuing upon discovery of the decedent's peril and his disregard of it.

As to the decedent's freedom from concurring negligence, it might be found that the warning whistles were not sounded in time for him to step from the track and save himself. While there was much evidence to the contrary, the evidence that the train could be stopped in 130 feet, but went 150 feet after striking the decedent, justified the inference that the brakes were not set until the train was close upon him. And the testimony that the brakes were set in almost concurrent action with the blowing of the whistle and on its fourth blast, gives support for the conclusion that the signals came too late to be heeded with saving action.

Under such an inference from the evidence liability might be established if the decedent had been sober, and hence his intoxication might

be disregarded as without causal effect. It therefore becomes unnecessary to pass upon the sufficiency of the evidence to show the decedent's incapacity to use care enough to save himself when the signals were given. The last chance issue was for the jury.

With reference to exceptions to the charge and to the denial of requested instructions, one requested instruction was that an intoxicated person must use the care of a sober person in the same circumstances and that incapacity from intoxication to use care makes no difference. In connection with the last chance doctrine, such an instruction would nullify it in cases of injury to one incapacitated by intoxication.

An intoxicated person is held to the care of sobriety. But this is because responsibility for conduct while intoxicated arises from negligence in becoming intoxicated and thus depriving oneself of the ability in part or in whole to use care. The conduct of intoxication being due to the intoxication, it is due to negligence, since the intoxication is negligent. If one does not act as a sober person because he cannot, the law does not blind itself to the fact and recognizes the impossibility of sober conduct. The law imposes liability because of the causal fault of becoming intoxicated, but not, as it is considered, because of active and operating negligence when irresponsibility controls the conduct. The liability is for the irresponsibility, and hence for what is done because of it, rather than for not using care at the time. The results under either view are the same, except with respect to the last chance rule, where the distinction becomes important.

While an intoxicated person is held to the standard of care of a sober person, he may be entitled to protection when a sober person would not be. This is not because of his intoxication but because of the situation in which his condition has placed him. The law does not thereby give him a better standing than it gives a sober person. Each alike has the right to receive care when his negligence has placed him in a position of danger from which he cannot escape by his own efforts. The nature of the injured person's careless conduct is immaterial. Negligence from intoxication and on some other account is treated the same. While a sober person cannot have the benefit of the last chance rule which an intoxicated person may have by reason of his incapacity, there is no favor to the latter. It is the situation of incapacity, however it arises, that invokes the duty of saving action by the defendant.

Under the general scope of the last chance rule in force in Vermont

it would seem that intoxication may be a condition or circumstance without being causal.

The jury were told that intoxication does not relieve from the requirement of care, that the decedent was negligent in walking on the track, and that it was for them to say if he was negligent in not heeding the warnings through inability to do so or other reason. This was sufficiently favorable to the defendant.

It was in evidence that the train was moving at an excessive speed when the decedent was first seen by the fireman. The jury were told that its speed "as it came into the railroad yard and on to the intestate" was to be determined and if found excessive would be negligence and "an element in the case" to be considered. They were thus given to understand that even if the defendant did all it could after the decedent's presence was or should have been noticed, there might be liability.

While excessive speed after reasonable discovery of the decedent might be a ground of liability as an operation of continuing negligence, yet antecedently it would be but a circumstance or condition, to be dealt with under the last chance rule in the same way as the decedent's intoxication. This appears to accord with the position taken in *Dent* v. *Railway*, 95 Vt. 523, 532, where it is said: "The test . . . is whether . . . the claimed negligence of the defendant was an active element after the negligence of the intestate had become a condition or circumstance; in other words, whether the defendant's wrongful conduct contributing to the accident was in operation at the moment it occurred or became inevitable. While the law under the doctrine of the 'last clear chance' contemplates only the subsequent negligence of the defendant, the negligence, if such it was, in failing to provide a headlight, was continuous to a time when the accident became inevitable, which answers the . . . requirement . . ."

Later in the charge liability was stated to be limited to negligence in not stopping the train after it appeared that warning whistles would be ineffective. This does not seem a sufficiently definite exclusion of negligence in speed prior thereto which had expressly been put on the same standing as subsequent speed. As already stated, excessive prior speed might be considered as a circumstance in passing upon the proper operation of the train after observation of the decedent was had or was due. But no such limitation of its consideration was fairly and clearly directed. It was put squarely on equality with speed ensuing upon such observation. Correction of the error called for more pointed attention than it received. The defendant had re-

quested an instruction to the effect that the last chance rule imposed no liability for a negligent speed at the time the decedent was or ought to have been observed. The request accurately stated the law, and it should have been granted in direct and definite expression. The exception to its denial and to the charge on the point are sustained.

In the charge the last chance rule was said to come into application when the injured person's peril is or should be discovered. This is error. It is not until the defendant should assume that the injured person may not save himself that the defendant's ensuing negligence becomes the sole legal cause of the injury. Until then contributory negligence continues to operate. The person injured being at fault for incurring his danger, the change in his fault from a character of cause to one of occasion depends not alone on the situation that the defendant may save him when he may not save himself, but on the further step of notice to the defendant of such situation.

The charge disregarded an elementary principle of the law of negligence. As long as the defendant may reasonably assume that the person injured will so act as to avoid or avert danger, he is not required to take action merely because danger exists. It is an exercise of care to rely on care by others until it appears that the reliance should not be given. Since men are ordinarily careful, their apparent ability to save themselves by using care justifies conduct on that assumption. Anticipation that they may be careless or that their own care may not save them is not required until notice sufficient to induce action on the part of the ordinary man is given that care by the injured person either will not be exercised or will fail in its effort.

The last chance rule being supported in Vermont under a theory of sole legal cause, the negligence for which there is liability under it must be subsequent to and ensue upon the cessation of the injured person's negligence as a contributory factor. Since there can be no such ensuing negligence until the injured person's ability to use care which will save him may not be assumed, the rule may only have force after that assumption has become unreasonable.

The jury were permitted to infer where the fireman in due care would have first seen the decedent on the track. It seems problematical to say that he was on the track for any appreciable time before he was seen. It is true he was not seen to enter upon the track. But his course to the track from the point where he had last previously been seen by others was uncertain. Two or more ways or paths were open to him, and considering his northerly direction of progress after

entering the track, it is at least as probable that he took a way leading to the track which would make his entrance thereon practically coincident with the fireman's first sight of him. To say he might have been seen sooner, employs conjecture.

Other exceptions were taken in connection with the charge. The order for retrial of the case renders ruling upon them unnecessary, and it is not deemed advisable to pass upon them, or on the exceptions relating to argument.

*New trial.*

All concurred.