Katherine JAMES, Administratrix of the Estate of Frank James, Deceased, Plaintiff-Appellant,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee.

No. 71-1734.

United States Court of Appeals, Tenth Circuit.

July 27, 1972.

Melvin L. Robins, Albuquerque, N. M. (Lorenzo A. Chavez, Albuquerque, N. M., on the brief), for plaintiff-appellant.

Jerrald J. Roehl, Albuquerque, N. M. (B. G. Johnson and J. J. Monroe, Albuquerque, N. M., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and KILKENNY * and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The district court granted the motion of defendant-appellee Santa Fe for summary judgment based on answers to interrogatories, depositions and affidavits, and the question here presented is whether it was appropriate for the court to determine that defendant had demonstrated beyond reasonable doubt that there were no genuine issues of fact in the case and whether it was proper to enter judgment for the Santa Fe as a matter of law. We conclude that there are triable issues and, therefore, we reverse and remand for a trial.

The Santa Fe cars backed over decedent, Frank James,[1] amputating both of his legs. He was at the time in a helpless, unconscious state due to a condition of drunkenness. The present plaintiff, decedent's wife, has been appointed administratrix and substituted as a party plaintiff following James's death.

Decedent, a Navajo Indian, had been employed by the Santa Fe as a laborer on a part-time basis, and on November 13, 1968, he came to the office of the Santa Fe at Gallup, New Mexico, for the purpose of collecting a small amount of wages and/or expenses which were due him. He was told at the Santa Fe office that his check had not been received, and he thereupon walked across the street, which is U. S. Highway 66, and frequented a number of bars. He started drinking at 1:00 p. m. and continued until about 10:00 p. m., according to his testimony on deposition, consuming about five pints of wine. Apparently he left the bars and walked across the street to the Santa Fe property and fell asleep with his legs across one of the rails. At about 11:30 p. m. a Santa Fe boxcar was pushed over his legs severing both of them.

The track where he passed out was a spur located some 200 feet north of Highway 66. The main line of the railroad is parallel to the spur and the spur joins it some 200 feet east of the place where decedent was struck.

The evidence as to decedent's unconsciousness and helplessness at the time of impact is undisputed.

Other evidence in the record suggests that there had been previous problems arising from the presence of Indians and the City Police were shown to have regularly removed drunken Indians from this area. There was no fence or other obstruction to prevent them from roaming the railroad yards. The area was shown to have been relatively well lighted. A photograph which is part of the record depicts bright lights along the main line of the railroad adjacent to the Santa Fe

---

* Of the Ninth Circuit sitting by designation.

1. He later died from causes unrelated to the injuries here under consideration.

buildings. Also, nearby Highway 66 is shown as a well lighted street.

The accident occurred as two railroad cars were being spotted on the spur line where decedent was lying. The locomotive was pushing them in a westerly direction and thus the headlight was not helpful since the railroad cars were between the engine and the decedent's body. The foreman was, however, in his words, riding "point"; that is, he was at the end of the second railroad car—presumably for the purpose primarily of guiding the engineer, but also for the purpose of watching the track. The train was moving slowly at the time. The foreman stated that the likely reason for his not having seen decedent was that he was on the side of the car opposite to the rail on which the decedent's body was lying, this being the less lighted side.

In granting summary judgment the trial court did not extend his remarks. In the letter which the judge wrote to notify the parties of his decision, he did say:

I have this day entered an Order granting summary judgment in the above-styled case based upon all of the material presented in the record as it stands and the briefs.

I have a particularly acute awareness of the question of contributory negligence on the part of the plaintiff as a matter of law as it is presented in the record allowing the plaintiff the most favorable inferences from all the facts. (See Vol. I, Record on Appeal, p. 75.)

The company's own safety rules require the utmost care in coupling or uncoupling cars and prohibit movement of engines and cars until employees and others are clear of the track. Still another rule requires utmost care to prevent striking persons, animals or vehicles.

Our conclusion that the judgment must be reversed is based on two propositions: *first*, that the owner of land, whether it be a railroad or other owner, must exercise reasonable care to control its active forces so as to avoid injury to persons who are on its property where the owner has knowledge or should, by the exercise of care, have knowledge of their presence and, *secondly*, that we consider the last clear chance doctrine to be applicable, thus giving rise to issues of fact whether the defendant knew or should have known of the helpless peril of the decedent and as to whether the defendant failed to exercise care commensurate with the circumstances to prevent the injury.

## I.

The rules surrounding granting of summary judgment pursuant to Rule 56 (F.R.Civ.P.) are familiar. It is axiomatic, for example, that the moving party must demonstrate entitlement beyond reasonable doubt and that the courts, trial and appellate, must consider factual inferences tending to show triable issues in a light favorable to existence of such issues. See 6 Moore's Federal Practice §§ 56.15(1), (3), (8), 56.27(1); Avrick v. Rockmont Envelope Co., 155 F.2d 568, 9 F.R.Serv. 56c. 41, Case 7 (10th Cir. 1946); Broderick Wood Products Co. v. United States, 195 F.2d 433 (10th Cir. 1952); Clausen & Sons v. Theo Hamm Brewing Co., 395 F.2d 388 (8th Cir. 1968). Thus, if there is an inference which can be deduced from the facts whereby decedent might recover, summary judgment is inappropriate.

Our sole determination in the case at bar is that the last clear chance doctrine would have allowed the jury to find and conclude that the railroad not only owed a duty to decedent, but violated the duty owed. The record fails to disclose that the trial court considered this legal approach to the case.

## II.

Santa Fe's contention that the decedent was a trespasser and is on this account barred from recovering—that it owed no duty to him other than that of refraining from wantonly and willfully injuring him—must be rejected. Such a theory assumes that the trespasser is in

essence an outlaw and as such cannot complain if he is injured while trespassing; this doctrine, to the extent that it exists, is limited to conditions in which the owner of land does not have actual awareness of the presence of the trespasser and is not charged with such knowledge. Numerous cases do recognize that there are conditions which impose a duty to be on the lookout at a customary pedestrian crossing or in a populated area. *Cf.* Catlett v. Colorado & S. Ry. Co., 56 Colo. 463, 139 P. 14 (1914), and see Jones v. Atlanta-Charlotte Air Line R. Co., 218 S.C. 537, 63 S.E.2d 476 (1951), and Small v. Boston & Maine RR., 85 N.H. 330, 159 A. 298 (1932).

■ In the case at bar the injury occurred on tracks adjacent to a street in a well settled community and in the face of evidence that the railroad had knowledge of the sometime presence of persons thereon. The duty to use care in these circumstances even though the victim was a trespasser is expounded in the Restatement of Torts, Second, § 334 as follows:

> Activities Highly Dangerous to Constant Trespassers on Limited Area
> A possessor of land who knows, or from facts within his knowledge should know that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

The New Mexico Uniform Jury Instruction #10.3 also reflects that duty to a trespasser exists under these conditions and that the standard is reasonable care:

> An owner owes no duty to a trespasser unless his presence on the premises is either known or from facts and circumstances should reasonably have

been anticipated. However, the owner is under a duty not to willfully or wantonly injure a trespasser.

If an owner knows or from facts known to him should reasonably anticipate the presence of a trespasser in a place of danger then the owner is under a duty to use ordinary care to prevent injury to him.

See also Latimer v. City of Clovis, 83 N.M. 610, 495 P.2d 788 (N.M.App.1972) (an attractive nuisance case in which a five-year-old child drowned while trespassing in the area of a swimming pool not in use).

It is clear then that a categorical approach based on the fact of trespass is not proper. The surrounding circumstances are the only safe measure of the extent of the duty arising from antecedent drunkenness.

### III.

■ It is equally clear that the doctrine of contributory negligence does not automatically bar the action. To so hold would conflict with the orthodox rule of last clear chance enunciated in the Restatement of the Law of Torts § 479, which rule has been adopted by the New Mexico Supreme Court in Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405, 407 (1954). The court there enunciated the elements of the last clear chance as being

> (a) that the appellant has been negligent, (b) that as a result of her negligence she is in a position of peril from which she cannot escape by the exercise of ordinary care, (c) that the defendant knows *or should have known* of plaintiff's peril, and (d) that appel-of ordinary care to avoid the injury and that he failed to do so. (citing case) (271 P.2d at 407, emphasis supplied.) [2]

2. § 479 of the Restatement of the Law of Torts, Second provides:
479. Last Clear Chance: Helpless Plaintiff
A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may

recover for harm caused thereby if, immediately preceding the harm,
(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and
(b) the defendant is negligent in failing to utilize with reasonable care and

The drunkenness of the decedent is not conclusive because it is antecedent in time to the activity of the defendant resulting in decedent's injury. Granted, the decedent was guilty of misconduct (negligence) in voluntarily getting drunk. However, this wrongdoing had come to rest: it did not persist up to and including the time and place of the impact. At this late stage decedent was in helpless peril within the meaning of Merrill and Restatement, *supra.*

Some authorities say that drunkenness is not to be regarded as a proximate cause essential to contributory negligence. Other cases approach it on the theory that the defendant's conduct is to be judged in relationship to a condition rather than to active conduct. Regardless of the approach, the law is clear that this degree of drunkenness is no different than illness or unconsciousness resulting from a cause less reprehensible than alcohol.

The rule that voluntary intoxication to the point of helplessness does not constitute negligence on a continuing basis to the point of impact is well discussed in a Note, Last Clear Chance—Intoxicated Person, 26 ALR 2d 308, wherein the author states:

> [H]elpless intoxication is not different from any other disability, and that the last clear chance doctrine should apply, thus making the negligence of the intoxicated person the remote cause of the accident and the negligence of the other party the proximate cause. 26 ALR 2d at 312).

The cases are numerous. See, for example, Carlson v. Connecticut Co., 95 Conn. 724, 112 A. 646 (1921); Fort Worth & D. C. Ry. Co. v. Longino, 54 Tex.Civ. App. 87, 118 S.W. 198 (1909); Jones v. Atlanta-Charlotte Air Line R. Co., 218 S.C. 537, 63 S.E.2d 476 (1951); Small v. Boston & Maine RR., 85 N.H. 330, 159 A. 298 (1932).

We conclude, therefore, that there are genuine issues of fact to be tried. The inquiry must be whether pedestrians frequented the area in question, whether intoxicated persons were among them, whether this fact was generally known and whether it was known to the railroad company and, further, whether the conditions were such as to require the Santa Fe to keep a proper lookout and whether it failed to do so. The legal standards are those set forth in the Restatement of Torts, Second, § 479 and the New Mexico cases. These are:

1. Whether the decedent as a consequence of his prior negligence was in a position of inextricable peril, powerless to escape by the exercise of ordinary care; if so,

2. Whether the defendant knew or should have known of decedent's peril; and, if so,

3. Whether the Santa Fe was negligent in failing to exercise ordinary care to avoid the injury.

The judgment is reversed, and the cause is remanded for trial in accordance with the views which are expressed herein.

---

competence his then existing opportunity to avoid the harm, when he
  (i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or
  (ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

See also Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028 (1960), and Montoya v. Williamson, 79 N.M. 566, 446 P.2d 214 (1968). In both of these cases the New Mexico Supreme Court has endorsed the Restatement § 479.