MUSTANG FUEL CORPORATION, a corporation, Appellant,

v.

YOUNGSTOWN SHEET AND TUBE COMPANY, an Ohio Corporation, Appellee.

No. 76–1462.

United States Court of Appeals, Tenth Circuit.

Submitted Aug. 2, 1977.

Decided Sept. 2, 1977.

Rehearing Denied Sept. 28, 1977.

Edwin D. Abel of Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, Okl., for appellant.

Gary W. Gardenhire, Oklahoma City, Okl. (Calvin W. Hendrickson, Oklahoma City, Okl., on the brief), Pierce, Couch, Hendrickson & Short, Oklahoma City, Okl., of counsel, for appellee.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

This is the third appeal by the same appellant, Mustang Fuel Corporation (Mustang), from the grant of a Summary Judgment on behalf of appellee, Youngstown Sheet and Tube Company (Youngstown). Jurisdiction vests by reason of diversity.

The facts giving rise to the controversy involved here have been fully developed in *Mustang Fuel Corporation v. Youngstown Sheet & Tube Company*, 516 F.2d 33 (10th Cir. 1975). Briefly, Youngstown manufactured and delivered 37 miles of metal pipe in compliance with the API specifications contained in its contract with Mustang, the purchaser. Mustang laid the pipe to transport natural gas to its customers. Some three years after the pipe was laid, an explosion occurred at Okarche, Oklahoma, resulting in the death of Mrs. Ervin W. Lemke and serious injuries to members of her family. Mustang, while denying liability, settled with the Lemkes in amount of $680,000.00 and it thereafter filed suit seeking recovery from Youngstown on two grounds: first, on the basis of indemnity and, second, for the economic loss incurred in replacing that which Mustang contends to have been defective pipe sold and supplied to it by Youngstown.

Upon the first appeal, this court set aside a summary judgment granted to Youngstown against Mustang (denying Mustang any recovery) for failure of the trial court to follow the mandates of rule 56(c), Fed. Rules Civ.Proc., 28 U.S.C.A., relative to hearing and notice requirements. *Mustang Fuel Corporation v. Youngstown Sheet & Tube Company*, 480 F.2d 607 (10th Cir. 1973).

Upon the second appeal, this court again set aside a summary judgment granted to Youngstown against Mustang (denying Mustang any recovery) and remanded for further proceedings to determine the applicability of the doctrine of strict liability in tort announced by the Oklahoma Supreme Court in the case of *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okl. 1974), which decision was handed down some three months after the trial court granted the second summary judgment. We there specifically rejected Mustang's claim for recovery against Youngstown— and in doing so affirmed the trial court—insofar as Mustang's basis for recovery was on its contractual claim of breach of implied warranty of fitness of the pipe for its particular use. We rejected the breach of implied warranty claim, holding that Youngstown had complied with its express contract with Mustang in that it manufactured the pipe pursuant to American Petroleum Institute (API) standards and specifications. *Mustang Fuel Corporation v. Youngstown Sheet & Tube Company*, 516 F.2d 33 (10th Cir. 1975). However, as previously noted, we did set the summary judgment aside and remanded for further proceedings in light of the *Kirkland, supra*, decision.

The trial court, in the case at bar, again granted summary judgment to Youngstown, based upon a review of the entire record, our opinion reported in 516 F.2d 33, *supra*, and memorandum briefs of the parties. The Order recites that the court ". . . finds that there is no evidence tending to establish any genuine issue of liability of the defendant, . . . [Youngstown] . . . under the theory of Manufacturers' Products Liability as adopted by the Supreme Court of Oklahoma in its decision, *Kirkland v. General Motors Corporation, supra*, and that, accordingly, pursuant to the mandate of the United States Court of Appeals for the Tenth Circuit, the Summary Judgment heretofore granted the defendant is reinstated by the Court, Judgment is granted to the defendant under the doctrine of Manufacturers' Products Liability, and Judgment is hereby entered dismissing this action." [R., Vol. I, p. 138.]

A Motion for New Trial was filed by Mustang and overruled. Thereafter, the trial court entered a detailed Memorandum Opinion and Order denying the Motion for New Trial for these reasons: (1) Mustang failed in its burden of proving an unreasonable danger, (2) Mustang voluntarily assumed the risk of a known defect, and (3) an act of Mustang caused the injury complained of.

The sole issue on appeal is whether, as Mustang contends, there is a genuine issue as to any material facts from which reasonable men could find Youngstown liable to Mustang on the basis of the theory of "Manufacturers' Products Liability."

■ We undertake this review, guided by the rule that a motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact. *Dzentis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974); *James v. Atchison, Topeka & Santa Fe Railway Co.*, 464 F.2d 173 (10th Cir. 1972).

■ We recognize that great deference is to be accorded the views of a resident federal district judge relative to the interpretation and application of the law of his state in the absence of controlling precedents opined by the highest court of that state. *In Re Cox*, 543 F.2d 1277 (10th Cir. 1976); *Matthews v. IMC Mint Corporation*, 542 F.2d 544 (10th Cir. 1976). Where, as here, the state's highest court has opined, the question is then one of law. Our review is then governed by the "clearly erroneous" rule. Reversal is required only if the appellate court's review results in a firm conviction that a mistake has been committed. Fed.Rules Civ.Proc., rule 52, 28 U.S.C.A.; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Muller v. United States Steel Corporation*, 509 F.2d 923 (10th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

## I.

■ At the threshold, we observe that the trial court's memorandum opinion recites that this court's 1975 opinion held that Youngstown complied with its contract with Mustang in that it manufactured the pipe to API standards and specifications. Accordingly, the trial court ruled that the proffered depositional testimony of one Dr. Robert Hockman, a metallurgical expert, relative to tests and examinations which he conducted on fractured sections of the pipe, in the nature of "microprobe analysis" which led him to conclude that the pipe was defective when delivered by Youngstown notwithstanding its compliance with the API specifications, was not admissible. The trial court erred in so ruling.

In our 1975 opinion (516 F.2d 33) we upheld the trial court's ruling rejecting the offer of Dr. Hockman's expert testimony because the suit was on the contract and ". . . there being no cogent evidence that API specifications were not met, summary judgment was properly granted against Mustang's *theory of breach of express warranty urged upon the Court.*" 516 F.2d, at 38. We anchored our holding supporting the denial of Dr. Hockman's expert testimony to the proposition that his testimony did not go to any issues raised in the contract proper which would aid Mustang's claim of breach of express warranty. Dr. Hockman's testimony, we noted, involved the results of tests he conducted on sections of the fractured pipe which ". . . were not included in the tests required by the API in determining whether or not the pipe conformed to API standards." 516 F.2d at 38. When this court upheld the trial court's rejection of the proffer of Dr. Hockman's expert testimony aforesaid, we *did not* indicate, directly or by implication, that his expert testimony was to be rejected upon remand and rehearing insofar as it may be relevant and material in the determination of Youngstown's liability to Mustang under the doctrine of strict liability in tort or, as the Oklahoma Supreme Court referred to it in *Kirkland v. General Motors Corporation*, *supra*, "Manufacturers' Products Liability."

The trial court, in the instant proceeding, held that Dr. Hockman's expert testimony relative to defects in the pipe when delivered, in the nature of a concentration of sulphur in the heat-affected zone and an incomplete seam closure, did not present a triable issue of fact, predicated, as we view it, on the following "findings" contained in the court's memorandum opinion: (a) Dr. Hockman agreed that the API specifications did not call for the "microprobe analysis" test which he conducted, (b) Dr. Hockman's testimony established as undisputed fact that no specifications in the country require the tests he performed, (c) based on (a) and (b) there cannot be a triable issue of fact because Mustang has wholly failed in its burden to establish a defect in the pipe which was "unreasonably dangerous" when it left the hands of its manufacturer, Youngstown. Predicated on these findings, and others, the trial court ruled that: "The plaintiff [Mustang] has heretofore not brought forth evidence to show that the product was so defective as to be unmerchantable under the cumulative definition of 12A O.S.1971, § 2–314(2)(a–f). Under the burden of proof as established by *Kirkland, supra,* the court specifically finds that the testimony of Dr. Hockman is not sufficient to sustain this burden of proof. The pipe was not dangerous to an extent beyond that reasonably contemplated by an ordinary purchaser of pipe under the API specification 5LX." [R., Vol. I, p. 155.]

We hold that the above recital evidences that the trial court's finding that there was no unreasonable defect in the pipe when delivered—notwithstanding Dr. Hockman's expert opinion testimony—was a factual finding on the ultimate issue in controversy. The court's finding did go to proof. It reached the very *issue* in controversy. In light of *Kirkland, supra,* we must hold that the trial court usurped the fact finding function of a jury in foreclosing consideration of the expert testimony of Dr. Hockman on the ultimate issue of liability. Thus, the trial court's ruling that Dr. Hockman's expert testimony is inadmissible is clearly erroneous. We do not presume to say that a jury will not arrive at the same conclusion as that arrived at by the trial court. We simply hold that the expert testimony of Dr. Hockman does create a genuine issue as to material facts.

## II.

■ In *Kirkland v. General Motors Corporation, supra,* the Oklahoma Supreme Court embraced the doctrine initially labeled "Strict Liability in Tort" as announced in *Greenman v. Yuba Power Products,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963), which the Oklahoma court preferred to label as "Manufacturers' Products Liability." The American Law Institute has, as the *Kirkland, supra,* court observed, confirmed the acceptance of the California decision by its adoption and approval by other courts. The rule is set forth in Restatement of Torts (Second), § 402A, quoted in *Kirkland v. General Motors Corporation, supra,* as follows:

'(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold, (2) the rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his products, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' Restatement 347, 348.

Comment m to the Restatement makes it clear that the liability stated in § 402A is strict liability based on tort rather than warranty; that warranty has become so identified in practice with a contract of sale that the warranty theory has become something of an obstacle to the recognition of strict liability where there is no such contract; and that the rule stated in the section is not governed by the provisions of the Uniform Commercial Code, as

to warranties. See Restatement of Torts (Second), § 402A, p. 355–356.

521 P.2d, at p. 1358.

Mustang contends that the offered expert testimony of Dr. Hockman is the evidentiary basis upon which it relies for the application of the strict liability doctrine, and that this evidence creates a genuine triable issue as to material facts. We agree. We have not overlooked Youngstown's contention that Dr. Hockman's testimony was equivocable and that he required further examinations to substantiate his conclusions. Even so, Dr. Hockman testified that his conclusions were "fairly solid." In any event these are matters going to the weight and credibility of the proffered evidence.

Mustang recognizes that in order to prevail against Youngstown under the *Kirkland, supra,* doctrine, it must establish: (1) that the pipe sold by Youngstown was the cause of the injuries; (2) that the defect or defects existing in the pipe were in existence at the time the pipe left the possession and control of Youngstown; and (3) that the defect or defects in the pipe (based upon the Dr. Hockman opinion testimony) made the product unreasonably dangerous to Mustang or its property. Thus, this criteria, as applied to the instant case, does not permit the grant of a summary judgment.

During oral argument, counsel for Youngstown stated that Dr. Hockman testified that the subject pipe was not defective when delivered by Youngstown to Mustang. Such is not the case. A careful review of Dr. Hockman's deposition simply confirmed that he acknowledged that the pipe, as delivered, did comply with API standards. Dr. Hockman had previously testified, however, that his personal investigation—testing of two sections of the pipe close to or adjacent to the initial "fracture" points—involved his metallographical examinations of cross sections of seamed and corrosive areas of the fractured surfaces where he undertook a series of "microprobe analysis" and "micro examinations." These tests led him to conclude that "there are indications of lack of fusion in the weld area, which

was a weld seam originally, and there is an indication of high sulphur content in the steel in these areas, both of these leading to a corrosion process which wound up with a highly localized corrosion in the area of the seam." [R., Vol. VII, Deposition, pp. 10–13.] Dr. Hockman further testified that the corrosion he referred to reduces the cross sectional area capacity of the pipe resulting in pressure in the pipe and a stress intensity factor so that the combination of the extremely high intensity and reduced corrosion leads to a ruptured failure. [R., Vol. VII, pp. 12–16.]

We note that the trial court found that Mustang was not an "ordinary" consumer as contemplated under the doctrine announced in *Kirkland, supra*; that Mustang voluntarily assumed a known risk in that it used a process of cathodic protection to prevent preferential corrosion rather than a method recommended by Youngstown; and that because Mustang continued to use the same miles of pipe after several ruptures had occurred, it thereby assumed the risk of a known defect. We must reject the trial court's findings in these particulars insofar as they were relied upon in granting the summary judgment. The criteria to be applied is that laid down in *Kirkland, supra*. There are genuine triable fact issues for ultimate determination by a jury. We express no opinion on the merits of the trial court's grant of the summary judgment. We must, however, set it aside and remand to the district court with instructions to undertake further proceedings consistent with the views expressed herein.

Reversed and remanded.