**Donna SEABOURN, Plaintiff,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. I–300 OF WOODWARD COUNTY, a/k/a Sharon–Mutual Public Schools, et al., Defendants.**

**Case No. CV–10–92–R.**

United States District Court,
W.D. Oklahoma.

Dec. 21, 2010.

Blake Sonne, Norman, OK, for Plaintiff.

Cheryl A. Dixon, McDaniel, Longwell & Acord & Kroll PLLC, John E. Priddy, Rosenstein Fist & Ringold, Tulsa, OK, for Defendants.

## *ORDER*

DAVID L. RUSSELL, District Judge.

This matter comes before the Court on the Motion for Summary Judgment, filed by Defendants (Document No. 15) and the Motion for Summary Judgment filed by Plaintiff (Document No. 16). Plaintiff responded to Defendants' motion, and Defendants responded to Plaintiff's motion. Having considered the parties' submissions, the Court finds as follows.

Plaintiff was employed as a "career teacher" with the Independent School District No. I–300 of Woodward County until the Board voted for her nonreemployment for the 2009–10 school year. As a result of the decision, Plaintiff filed this action asserting claims under 42 U.S.C. § 1983 for deprivation of substantive and procedural due process. She also seeks relief under state law, asserting claims for breach of contract, tortious interference and civil conspiracy. The parties seek summary judgment on all claims.

The following facts are undisputed:

For the 2008–09 school year, Plaintiff was employed as a "career teacher," as defined in Okla. Stat. tit. 70 § 6–101.3(4). She served as the certified science teacher. Prior to the 2008–09 academic year, Defendant Emma Sidders became principal of the high school and superintendent of the district, Plaintiff's boss.

On September 16, 2008, Ms. Sidders conducted a formal evaluation of Plaintiff. As a result of what Ms. Sidders perceived as deficiencies in classroom management and supervision during the evaluation, Plaintiff was placed on a Professional Growth Improvement Plan. On October 8, 2008, Ms. Sidders conducted another evaluation of Plaintiff, and commented that Plaintiff's classroom management was satisfactory, and noted improvement over the last observation. On October 30, 2008, Ms. Sidders again evaluated Plaintiff, and noted nothing as "unsatisfactory." On November 4, 2008, Ms. Sidders evaluated Plaintiff, and this time marked several areas as unsatisfactory. Upon recommendation made by Ms. Sidders, Plaintiff attended professional workshops. On January 8, 2009, Ms. Sidders wrote comments about Plaintiff's performance as part of a review on her prior evaluation form, noting that Plaintiff "is working on her classroom/student management [and] I feel is making progress. It is still not at the point I would like it to be." On that same date Ms. Sidders authored a second Professional Growth Improvement Plan, which contained a deadline for improvement of February 26, 2009. Ms. Sidders indicated Plaintiff was deficient in controlling student behavior in the classroom and in being able to clearly relate the curriculum for student's understanding.

The Notice of Board Meeting for a March 9, 2009 school board meeting indicated that executive session would be held to "consider and take action on the following personnel with continuing contracts," followed by a list that included Plaintiff's name. According to Plaintiff, which Defendants do not dispute, following executive session the names of teachers whose contracts had been renewed were read aloud and Plaintiff's name was not included on the list.[1] As a result, Plaintiff assumed as of that date that she would not be rehired for the next school year, although no one told her as much.[2]

On March 16, 2009, Ms. Sidders authored a letter to Plaintiff, stating:

This letter is to inform you that at the March 9, 2009 meeting of the Sharon–Mutual Board of Education it was determined that your teaching contract will not be renewed for the 2009–2010 school year.

The letter listed three reasons for the Board's decision, and advised Plaintiff she was entitled to all of the rights and procedures outlined in the Board's policy and Oklahoma law.[3] The letter informed Plaintiff a hearing before the Board would be held on April 9, 2009.

In response to Ms. Sidders' letter, Plaintiff's counsel authored a March 23, 2009 response requesting clarification, as it appeared, to him that the Board had violated Oklahoma law and its own policy by deciding not to renew Plaintiff's contract at the March 9, 2009 meeting. On March 24,

1. A document provided by Defendants in support of their motion for summary judgment appears to be minutes from the March 9, 2009 meeting, although they are not captioned as such. This document indicates that "(No action was taken regarding Donna Seabourn's contract.)" The members of the Board filed affidavits indicating no action was taken on Plaintiff's contract at that meeting.

2. Plaintiff contends that Board member Tommy Stepp came to her home sometime after the March 9, 2009 meeting and apologized for what happened, without being more specific. "As a board member he can't say I'm fired." Plaintiff's Deposition at p. 43.

3. The District's School Policy Book provides that "[p]rocedures for dismissal of certified employees are governed by state law and all actions of the school district and the board are clearly identified in the statutes ... No action regarding dismissal or nonrenewal of an employee shall be taken until the employee has received due process." Sharon–Mutual Policy Book.

2009, Ms. Sidders sent a second letter to Plaintiff, which included the following:

> At the March 9, 2009 meeting of the Sharon–Mutual Board of Education continuous teaching contracts were considered for the 2009–2010 school year. At that time your contract was not renewed.

The March 24, 2009 letter listed the same three reasons for the nonrenewal and informed Plaintiff of the April 9, 2009 hearing. It reiterated the Board's intention to provide her with due process.

On March 27, 2009, Superintendent Sidders presented a memorandum to the Board of Education Sharon–Mutual Public Schools, which indicated it was an "[a]mended Recommendation for the Non-reemployment of Donna Seabourn.[4]" It included the following:

> Pursuant to the Oklahoma Teacher Due Process Act of 1990, as amended, this memorandum is an amended recommendation to the Board of Education for the nonreemployment of Donna Seabourn from her employment as a teacher in the Sharon–Mutual Public Schools for the 2009–10 School Year.

The memorandum listed four grounds for the recommendation, all of which are found in the Oklahoma statute. The memorandum reiterated the original three reasons as well, although none of these is a statutory reason for nonreemployment.

Minutes from an April 3, 2009 Special Board Meeting of the Sharon–Mutual Board of Education indicate a meeting was held and that the Board had received a recommendation from the superintendent for the nonemployment of Plaintiff for the 2009–10 school year. The board unanimously agreed that a copy of the recommendation should be mailed to Plaintiff along with a notice of her rights and of a hearing to be held on May 14, 2009. A letter dated April 3, 2009 from Ms. Sidders to Plaintiff reiterates the recommendation by Ms. Sidders to the Board and notified Plaintiff of a pre-termination hearing to be held on May 14, 2009.

An untitled document provided by Defendant, which the Court assumes to be minutes, indicates a special board meeting was held on May 14, 2009 to consider the nonrenewal of Plaintiff's contract. Three Board members were present, two were absent. The Board's counsel presented the basis for the recommendation of nonrenewal and Plaintiff's counsel responded thereto. The members present all voted for nonrenewal of Plaintiff's contract. On May 18, 2009, the Clerk of the Board of Education, Kevin Townsend, sent Plaintiff a letter indicating the Board's decision not to reemploy Plaintiff and notifying her of her rights to a trial *de novo* under Oklahoma law.

Plaintiff initially filed a petition for trial *de novo* in the District Court of Woodward County, which she withdrew upon deciding that she did not desire reinstatement as a teacher with the district.

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it is essential

---

4. This is the only written recommendation that exists.

to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendants first contend that Plaintiff has waived the right to challenge the process provided to her in her pretermination hearing by failing to pursue the trial *de novo*, which would have reevaluated the process and outcome of the hearing conducted by the Board. As noted by Plaintiff, the only remedy permitted by Oklahoma's Teacher Due Process statute in the trial *de novo* is reinstatement, and Plaintiff contends that because she did not desire reinstatement, she was not required to pursue *de novo* review.

■■■ "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Ripley v. Wyoming Medical Center, Inc.*, 559 F.3d 1119, 1122 (10th Cir.2009) (citations and internal quotation marks omitted). The root of the due process clause requires that an individual be given an opportunity for a hearing before she is deprived of any significant property interest. Defendants first contend that because Plaintiff waived her right to *de novo* review in state court that she cannot be permitted to seek judicial review of the board's decision in this court.[5]

In support of this proposition Defendant relies on *Pitts*. In that case, unlike this, the plaintiff did not await *any* termination hearing, choosing instead to file a federal lawsuit. As such, the court concluded that Mr. Pitts could not complain about being denied due process when he opted out of the procedural safeguards provided by state law. In *Kirkland v. St. Vrain Valley School Dist. No. RE–1J*, 464 F.3d 1182, 1195 (10th Cir.2006), also cited by Defendants, the plaintiff was an assistant superintendent who was terminated after it was determined he was responsible for supervising an employee whose errors resulted in a surprising and substantial budget shortfall. Plaintiff agreed to resign in return for the District's agreement to con-

---

5. Although this issue can be confused with the notion of exhaustion, which is not required for 42 U.S.C. § 1983 claims, the issue actually touches on whether a due process claim exists. As noted by the Court in *Pitts v. Board of Education of U.S.D. 305, Salina KS.*, 869 F.2d 555, 557 (10th Cir.1989):

> [O]ur holding here is not that Pitts must exhaust his claim before he has a federal cause of action; rather, unless state law fails to afford Pitts adequate process, he has no federal constitutional claim to begin with. And by waiving his hearing, Pitts deprived the school board of the opportunity to provide him with due process, and he gave up his right to test the correctness of the board's decision.

tinue paying his salary and benefits through the term of his contract. Mr. Kirkland sued for violation of his due process rights when the Board refused to accept his resignation and instead suspended him without pay before terminating him. A subsequent agreement resulted in an understanding that Plaintiff was not requesting a hearing from the Board and the Board would terminate him without comment. The court concluded that the plaintiff did not have a protected property interest in the resignation agreement, that suspension without pay did not warrant pre-suspension process, and that the plaintiff could not complain about the post-suspension process because he chose not to avail the process. Thus, neither of these cases is sufficiently on par as to dictate the outcome of this case, which poses a question of whether failure to avail oneself of post-termination process precludes a fired teacher from challenging the process provided pre-termination. The cases from other circuits cited by Defendants are similarly distinguishable. *See Birdwell v. Hazelwood,* 491 F.2d 490 (8th Cir.1974), the plaintiff chose not to attend a hearing regarding his status; *Correa v. Nampa School District,* 645 F.2d 814, 816–17 (9th Cir.1981)(plaintiff who chose not to pursue administrative procedure cannot pursue due process claim); *Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana,* 42 F.3d 403, 413–14 (7th Cir.1994)(teacher waived pre-termination hearing by asking that it be cancelled); *Suckle v. Madison General Hospital,* 499 F.2d 1364 (7th Cir.1974)(no due process claim where physician refused offer of hearing). Because Plaintiff did not bypass the pretermination hearing by the Board, the cases cited by Defendants are inapposite.

■ Defendants do not argue that Plaintiff was not entitled to predeprivation process. "Where there is 'the necessity of quick action by the State,' or where 'pro viding any meaningful predeprivation process would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing.'" *Elsmere Park Club, L.P. v. Town of Elsmere,* 542 F.3d 412, 417 (3d Cir.2008) (quoting *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). "Resort to postdeprivation procedures is required only where it is necessary to establish an underlying procedural due process violation. Where predeprivation process is constitutionally required but not provided, 'no amount of postdeprivation process' can cure an otherwise infirm deprivation." *Tristani v. Richman,* 609 F.Supp.2d 423 (W.D.Pa.2009)(quoting *Alvin v. Suzuki,* 227 F.3d 107, 120 (3d Cir.2000)). Because Defendants do not argue that Plaintiff was not entitled to predeprivation process, the relevant inquiry is not whether Plaintiff could have pursued a *de novo* hearing, but rather, whether the predeprivation process provided by Defendants was constitutionally adequate, and Defendant is not entitled to summary judgment merely because Plaintiff did not pursue *de novo* review.

"An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation omitted). The Supreme Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (emphasis in original)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property in-

terest in his employment." *Id.* (citation omitted).

*Riggins v. Goodman,* 572 F.3d 1101, 1108 (10th Cir.2009). The Court finds that the undisputed facts of this case establish that Plaintiff received "some kind of hearing" before the Board, that is she had notice and the opportunity to be heard. *Riggins* concluded:

> "[N]othing requires a municipal employer to hold a hearing prior to the initial decision to terminate a position; rather, a hearing is required before employees are actually deprived of their jobs. That is, a hearing is required before the employee is "deprived of any significant property interest." *See Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487. In other words, due process is required not before the initial decision or recommendation to terminate is made, but instead before the termination actually occurs. *See Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1391 (8th Cir.1988) ("Due process ... does not require predecision hearings. It only requires an opportunity to be heard prior to the termination of benefits.")."

*Id.* at 1109. Accordingly, although Plaintiff contends that the May 15, 2009 hearing was a sham and that the decision had been made by the Board prior to that date, it is undisputed that Plaintiff was not deprived of any property until after the date of that hearing. As such, *Riggins* compels the conclusion that Plaintiff was granted sufficient process at the May hearing with regard to the loss of her job.

Plaintiff also contends the Defendants violated her right to a fair tribunal, be-cause members of the Board were biased against her and because the issue of her continued employment clearly had been discussed at the March 9, 2009 hearing, as evidenced by the March 16, 2009 letter from Defendant Sidders.

■ The Tenth Circuit has held that "[A] substantial showing of personal bias is required to disqualify a hearing officer or tribunal...." *Corstvet v. Boger,* 757 F.2d 223, 229 (10th Cir.1985). Indeed, a person claiming bias on the part of an administrative tribunal "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow [v. Larkin],* 421 U.S. [35,] 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). "Due process is violated only when 'the risk of unfairness is intolerably high' ... there must be some substantial countervailing reason to conclude that a decision-maker is actually biased with respect to factual issues being adjudicated." *Hicks v. City of Watonga,* 942 F.2d 737, 746–47 (10th Cir.1991); *see also Gwinn v. Awmiller,* 354 F.3d 1211, 1220 (10th Cir.2004).

*Riggins,* 572 F.3d at 1112. Plaintiff has failed to present any evidence of personal bias or ill-will by any member of the Board against her. Although she speculates that perhaps two members of the Board felt ill-will toward her because of incidents that occurred when she taught their children.[6] Her testimony, however, indicated only speculation, no evidence of bias by these board members. Additionally, the Court further finds no genuine issues of material fact with regard to the theory that the issue was discussed at the March 9, 2009

---

6. Plaintiff testified in her deposition that Kelly Overton's son was on the academic team and was removed because he missed too many meets. Plaintiff testified she had negative interactions with Mrs. Overton following this, but not with Kelly Overton. This incident occurred at least two years prior to Plaintiff's termination. Plaintiff testified she never felt animosity from Kelly Overton.

Darren Cottom's son had issues when his child did not perform well in Plaintiff's class and she felt Mr. Cottom was not friendly. Plaintiff did not testify that Mr. Cottom made any threats to her employment.

meeting such that the Board members were biased against her. Plaintiff has no evidence of any discussion of her contract at the meeting, the Board members all deny any such conversation, and the March 16, 2009 letter, although curious, is not itself sufficient to establish that the Board was biased against Plaintiff such that her rights were violated.

■ Finally, the parties spend considerable time discussing the requirements of the Oklahoma Teachers Due Process Act and whether such procedures were followed. The provisions of the Act are relevant only to Plaintiff's breach of contract claim or other state law claims. The fact that Defendants failed to comply with the specific process prescribed by Oklahoma law or any contract is immaterial to the Court's federal due process analysis, so long as the Plaintiff was afforded the constitutionally minimum standards thereof. *Riggins*, 572 F.3d at 1109 n. 3. Accordingly, any failure by the Board with regard to Oklahoma law is not an impediment to granting summary judgment to Defendants.

Plaintiff also seeks relief under a theory that her substantive due process rights were violated by Defendants.

"[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992)), *cert. denied*, 516 U.S. 1118, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). To meet this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of po-

tential or actual harm that is truly conscience shocking." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 528 (10th Cir.1998) (citation and internal quotation marks omitted). Yet "[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised ... decisions.'" *Uhlrig*, 64 F.3d at 573 (quoting *Collins*, 112 S.Ct. at 1070).

*Perry v. Taser Intern. Inc.*, 2008 WL 961559, *2 (D.Colo. April 8, 2008).

■■ This standard is exceedingly difficult to meet, a fact underscored by the cases in which courts have declined to find a violation of substantive due process rights under substantially more egregious allegations than presented by Plaintiff. *See, e.g., Harris v. Robinson*, 273 F.3d 927, 929 (10th Cir.2001) (no substantive due process violation where a teacher required mentally retarded ten-year-old boy to clean out a clogged toilet with his bare hands); *Williams v. Berney*, 2006 WL 753208 at *5 (D.Colo. March 20, 2006) (slip op.) (no substantive due process violation where state business license inspector assaulted plaintiff without provocation causing severe physical injuries and a subsequent stroke); *Robbins v. Bureau of Land Management*, 252 F.Supp.2d 1286, 1300 (D.Wyo.2003) (allegations that government officials threatened plaintiff, trespassed on his property, and convinced the prosecutor to pursue charges against him did not state cause of action for substantive due process); *Gonzales v. Passino*, 222 F.Supp.2d 1277, 1282 (D.N.M.2002) (no substantive due process violation on allegations that teacher struck recalcitrant student on the arm with a plastic bat). Again, accepting Plaintiff's allegations as true, nothing alleged is sufficiently conscious shocking so as to support a 42 U.S.C. § 1983 substantive due process claim. As such, Defendants are entitled to summary judgment on this claim.

Finally, because Plaintiff has not established an underlying 42 U.S.C. § 1983 claim, there can be no claim for conspiracy to violate her constitutional rights under § 1983.

At this late stage in these proceedings, the Court rejects Defendants' suggestion that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim. The Court finds, however, that Defendants are entitled to summary judgment on Plaintiff's state law claims.

Plaintiff alleges breach of contract by the Defendant District. Plaintiff contends that Defendant breached express and implied terms of the employment contract with Plaintiff by terminating her employment in violation of state law and by failing to provide any statutory basis for her termination, and by not affording Plaintiff the appropriate process. Defendant District contends first that Plaintiff has waived her right to seek relief under a theory of breach of contract by failing to complete the de novo review provided by the Oklahoma Teacher Due Process Act, and second, that it did not breach the contract with Plaintiff.

█ The Court has conducted exhaustive research on the issue of whether a "career" teacher may sue for breach of contract following nonrenewal of her contract or is she required to complete the de novo review process rather than seeking monetary relief from the Court. The Court's research has revealed not a single case where a career teacher sought relief on a theory of breach of contract, save for recent dispositions in the Northern District of Oklahoma, wherein the court declined to exercise supplemental jurisdiction over state law breach of contract claims. The Court has reviewed cases involving non-tenured persons and administrative personnel with no right to judicial review of decisions of their respective school boards. In those cases, and because there

was no right to judicial review, the courts concluded that

> Under the due process procedure set forth in § 6–101.13, the decision of the local board of education concerning dismissal of the local board of education concerning dismissal of an administrator is final. There is no right of appeal as provided tenured teachers. In considering a similar question where, a teacher, under the law then in effect, had no right of appeal, the Court of Appeals in *Scherich v. Independent School District No. 42 of Garfield County*, 591 P.2d 1270 (Okla.App.1979), found:
>
>> But to say Scherich has no right of appeal to the court is not to say he has no remedy for a breach of contract, *e.g.*, arbitrary dismissal for willful neglect of duty by the board—*i.e.*, a dismissal founded on no evidence of such neglect.

*Hoerman v. Western Heights Board of Education*, 913 P.2d 684, 690 (Okla.Civ. App.1996). In this case, each of the alleged contractual breaches about which Plaintiff complains would have been addressed in the statutory *de novo* review that she chose to forego. As such, the Court finds that Plaintiff has waived her right to seek relief under a theory of breach of contract. Accordingly, Defendant District is entitled to summary judgment on this claim.

Plaintiff also alleges intentional interference with a contract against the individually named Defendants. Plaintiff alleges their interference came via failure to follow the admonishment provisions, acting outside the scope of their authority as board members, violating Oklahoma's Open Meeting Act, and failing to provide Plaintiff due process.

█ The Court finds that the individual Defendants are entitled to summary judgment on Plaintiff's tortious interfer-

**1316**

ence claims. The District is a legal entity which can act only through its agents and employees. In order for employees of the School District to be liable for tortiously interfering with Plaintiff's employment contract with the district, Plaintiff must present evidence that the individual Defendants acted maliciously and wrongfully and that their interference was neither justified, privileged nor excusable. *Tuffy's, Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1163 (Okla.2009). Plaintiff has failed to adduce sufficient evidence from which a reasonable fact finder could find that the conduct of any of those Defendants constituted malicious or wrongful interference that was not justified, privileged nor excusable. Indeed, because Defendant Emma Sidders, superintendent, is statutorily authorized to make a recommendation for termination of a career teacher, she is implicitly authorized and privileged or justified in making an investigation to determine whether there is cause to make the recommendation. The individual Board members were justified and privileged to terminate Plaintiff's employment because they were performing their statutory duties, and two Board members, Defendants Stepp and Lamberth were not present for the vote, and thus the Court is unaware as to how they could be held liable. Plaintiff has failed to present evidence to establish that the individual Defendant's actions were not privileged.

 Plaintiff also alleges the Defendants conspired to interfere with her employment with the District. Plaintiff presents no evidence of a conspiracy other than the fact that three board members voted in favor of nonrenewal. A civil conspiracy consists of two or more persons agreeing "to do an unlawful act, or to do a lawful act by unlawful means." *Roberson v. Paine-Webber, Inc.,* 998 P.2d 193, 201 (Okla.Ct. App.1999). But "a conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." *Id.*

 Plaintiff presents no evidence of an agreement to do an unlawful act or to do a lawful act by unlawful means. Standing alone, the mere fact that three individual Defendants voted to not reemploy Plaintiff is not sufficient to establish a conspiracy under Oklahoma law. As such, the Court finds the individual Defendants are entitled to summary judgment on this claim as well.

Defendants' motion for summary judgment is granted with regard to Plaintiff's claims. Plaintiff's motion for summary judgment is denied.